Cletis Meredith MILLER

v.

**William BOLGER, Postmaster General of the United States Postal Service and The United States of America, Appellants.**

No. 85–5658.

United States Court of Appeals, Third Circuit.

Argued June 3, 1986.

Decided Sept. 30, 1986.

Thomas W. Greelish, U.S. Atty., Paul J. Dillon, Asst. U.S. Atty. (argued), Newark, N.J., for appellants.

Andrew S. Kessler (argued), Klein, Chapman, Greenburg, Henkoff & Siegel, Clifton, N.J., for appellee.

Before ALDISERT, Chief Judge, and GARTH, and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

**I.**

*Issue*

The narrow issue in this interlocutory appeal which is before us pursuant to 28

U.S.C. § 1292(b) is whether the plaintiff is precluded from proceeding with his Title VII suit against the Postmaster General and the United States because plaintiff is recovering compensation under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101–8193.

The defendants (collectively referred to as Postmaster General) appeal from the district court's order denying their motion for summary judgment. We affirm the order of the district court and hold that FECA recovery for injuries does not preclude plaintiff's claim for at least some Title VII remedies.

## II.

### Facts

Plaintiff Cletis Miller, a white male, was employed by the United States Postal Service from 1957 through 1972. In 1972, Miller became a member of the Postal Service Security Force and was transferred to the Postal Service Building, Newark, New Jersey, as a Postal Security Officer. On August 7, 1974, Miller voluntarily testified at a Civil Service Commission hearing on behalf of Albin Spence, a black male co-worker of Miller. As a result of the hearing, Spence was reinstated in the job from which the Postal Service had previously removed him.

Miller alleges that because of his testimony on behalf of Spence, he became the subject of harassment, abuse and physical attack by his co-workers and supervisors. For example, Miller alleges that: (1) in the summer of 1978, in the presence of a supervisor, Miller was struck in the leg and hip by a chair kicked by a co-worker; (2) in November 1978, Miller was injured by sitting in a broken chair substituted for his own chair by co-workers; (3) on July 20, 1979, Miller was injured when a supervisor dropped a chair on him; (4) on February 8, 1980, Miller suffered severe and permanent physical injuries when he was pushed against steel lockers by a co-worker. Miller contends that these abuses were permitted, condoned and encouraged by the supervisors and administrators of the United States Postal Service.

Miller's final pay period ended on February 24, 1981. He alleges that the physical injuries referred to above rendered him permanently disabled. Miller has received FECA benefits since early 1983, and continues to receive monthly FECA benefit checks based on the conclusion of the Department of Labor that Miller's disability was a result of on-the-job injuries.

On June 9, 1982, Miller commenced suit in the United States District Court for the District of New Jersey pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17. Miller alleges that his injuries resulted from a conspiracy among his co-workers, condoned by Postal Service supervisors, to retaliate against him because of his testimony on behalf of Spence. Miller seeks the following relief: (1) damages for temporary wage losses from November 30, 1978 to April 26, 1979 and from February 8, 1980 to May 13, 1980; (2) damages for permanent wage loss from February 24, 1981 through Miller's life expectancy of 21.58 years; (3) medical costs; (4) property damage to his automobile; (5) attorneys' fees incurred in seeking FECA benefits and in this lawsuit.

The Postmaster General filed a motion for summary judgment, claiming (1) that the district court lacked subject matter jurisdiction over the Title VII suit because Miller's exclusive remedy is under FECA and (2) that certain items of damage sought by Miller were compensatory or consequential and therefore are unavailable under Title VII. The district court considered only the exclusivity issue. The court held that the exclusivity provisions of FECA "do not preclude a federal employee from pursuing claims for work-related injuries under Title VII." App. at 49. The court thus denied the Postmaster General's motion for summary judgment but certified that its order was appropriate for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We granted permission to appeal.

The issue is one of law only, as to which we have plenary review. For purposes of this appeal, we will accept plaintiff's version of the facts and express no view as to the merits of his claim.

### III.

*The Statutory Framework*

Two statutory schemes are at issue: FECA and Title VII.

*FECA*

Employees of the United States government, including Postal Service employees, may recover under FECA for their wages lost and medical costs incurred as a result of injuries sustained in the performance of their duties. 5 U.S.C. §§ 8102(a), 8103(a), 8105, 8106. However, compensation for lost wages, whether the loss results from permanent or temporary disability, is limited to two-thirds of the employee's pay at the time of injury if the employee has no dependents, or three-quarters of the employee's pay at the time of injury if the employee has one or more dependents. 5 U.S.C. §§ 8101(4), 8105, 8106, 8110. Any recovery by the employee from a third party for an injury compensated under FECA must be credited to reduce the FECA compensation. 5 U.S.C. § 8132.

The Secretary of Labor, or his or her designee, makes the initial determination with respect to compensation under FECA. 5 U.S.C. § 8124. After an administrative review procedure, the Secretary's decision is final, and "not subject to review by another official of the United States or by a court by mandamus or otherwise." 8 U.S.C. § 8128(b).

The receipt of compensation under FECA limits the employee's right to pursue certain other avenues for obtaining compensation from the United States. Specifically, FECA provides:

> The liability of the United States or an instrumentality thereof under this subchapter ... with respect to the injury or death of an employee is exclusive and

instead of all other liability of the United States or the instrumentality to the employee ... entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c). Moreover:

> An individual entitled to benefits under this subchapter because of his injury ... who also is entitled to receive from the United States under a provision of statute other than this subchapter payments or benefits for that injury ... because of service by him ... as an employee ... shall elect which benefits he will receive.... The election when made is irrevocable, except as otherwise provided by statute.

5 U.S.C. § 8116(b).

*Title VII*

Title VII makes it unlawful for employers in both the public and private sector to discriminate against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. In addition, discrimination against an employee for testifying at a hearing concerning a prior discriminatory practice is made unlawful. 42 U.S.C. § 2000e–3(a).[1] Coverage of Title VII extends to United States Postal Service employees. 42 U.S.C. § 2000e–16. An employee demonstrating an unlawful discriminatory practice under Title VII is entitled to recover:

> ... such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate.... Interim earnings or amounts earnable with reasonable diligence by the person or persons discrimi-

---

1. We note that the Postmaster General has denied that the Spence hearing was one investigat-

ing discrimination. App. at 37. That issue remains open in the district court.

nated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e–5(g). In addition, attorney's fees may be recovered by the prevailing party in a Title VII action. 42 U.S.C. § 2000e–5(k).

## IV.

*The Exclusivity of FECA Compensation*

In resolving the issue before us, we turn first to the statutory language. FECA is the exclusive source only of "damages ... because of the injury," 5 U.S.C. § 8116(c). This contrasts with Title VII, which does not refer to "damages" but to "equitable relief." 42 U.S.C. § 2000e–5(g). Title VII remedies have generally been viewed as equitable make-whole relief to redress discrimination. *See, e.g., Gurmankin v. Costanzo*, 626 F.2d 1115, 1120–21 (3d Cir.1980). Also, the language of section 8116(c) specifically refers to the alternative remedies "under a workmen's compensation statute or under a Federal tort liability statute," which suggests that FECA was intended primarily to supplant an alternative liability scheme for tortious injury and not to exclude liability under a federal discrimination statute such as Title VII.

Whatever ambiguity remains after analysis of FECA's language is readily removed by resort to legislative history. Section 8116(c), in substantially the same form it stands today, was added to FECA by Congress in 1946. The Senate Report which accompanied the amendment explained the purpose of the exclusiveness language:

> Workmen's compensation laws, in general, specify that the remedy therein provided shall be the exclusive remedy. The basic theory supporting all workmen's compensation legislation is that the remedy afforded is a substitute for the employee's (or dependent's) former remedy at law for damages against the employer. With the creation of corporate instrumentalities of Government and with the enactment of various statutes authorizing suits against the United States *for tort*, new problems have arisen. *Such statutes as the Suits in Admiralty Act, the Public Vessels Act, the Federal Tort Claims Act and the like*, authorize in general terms the bringing of civil actions for damages against the United States. The inadequacy of the benefits under the Employees' Compensation Act has tended to cause Federal employees to seek relief under these general statutes. Similarly, corporate instrumentalities created by the Congress among their powers are authorized to sue and be sued, and this, in turn, has resulted in filing of suits by employees against such instrumentalities *based upon accidents in employments.*
>
> This situation has been of considerable concern to all Government agencies and especially to the corporate instrumentalities. Since the proposed remedy would afford employees and their dependents a planned and substantial protection, to permit other remedies by civil action or suits would not only be unnecessary, but would in general be uneconomical, from the standpoint of both the beneficiaries involved and the Government.
>
> \*       \*       \*       \*       \*       \*
>
> The saving to the Government by the elimination of costly and needless claims and litigation *under the Federal Tort Claims Act, Suits in Admiralty Act, Public Vessels Act, and the like,* which presently weigh heavily upon the Government and involve considerable expense to defend will be eliminated, offsetting in substantial part the increased cost in compensation benefits.

S.Rep. No. 836, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.Code Cong. & Ad. News 2125, 2136, 2143 (emphasis added).

▪ FECA's legislative history, therefore, confirms that FECA was intended only to be a substitute for suits against the United States for tortious injury as authorized by statutes similar to the Federal Tort Claims Act. *See also United States v. Demko*, 385 U.S. 149, 151, 87 S.Ct. 382, 383–84, 17 L.Ed.2d 258 (1966) (compensation laws are, generally, substitutes for common law tort actions). Since the exclu-

sivity clause was added to FECA in 1946, and Title VII, which was passed in 1964, was not amended to allow suits against entities such as the United States Postal Service until 1972, it follows that there is no reference in FECA's legislative history to the effect of the exclusivity clause on claims under Title VII in particular, or suits for relief from discrimination in general.

█ It is significant, however, that nowhere in the legislative history of the Equal Employment Opportunity Act of 1972, which made Title VII applicable to certain federal employees, is there any mention of FECA recovery as precluding actions for discrimination. Had Congress intended that FECA recovery would preclude Title VII relief from the United States, it is likely that there would be some reference to this intent either in the 1972 statute or in its legislative history.[2] No such mention is to be found. To the contrary, the legislative history of the Equal Employment Opportunity Act of 1972 suggests that its extension of Title VII's coverage to certain federal employees was intended to make available to those federal employees the same benefits and protections from discrimination available in the private sector by removing "legal obstacles in obtaining meaningful remedies." H.R. Rep. No. 238, 92d Cong., 2d Sess., *reprinted in* 1972 Code Cong. & Ad.News 2137, 2159–60. We believe that this supports our conclusion that Congress did not intend that recovery for tortious injury under FECA should preclude Title VII remedies for discrimination.

The Postmaster General points to the language of FECA's election clause, 5 U.S.C. § 8116(b), as indicating that once Miller elected to pursue FECA compensation he was irrevocably barred from pursuit of other remedies. The language of FECA, however, is relatively clear that election is only required between FECA benefits and other benefits due the employee "because of service by him ... as an employee or in the armed forces." Since Title VII benefits would not be due Miller "because of" his service, no election is required.[3]

The numerous cases cited us by the Postmaster General are inapposite to the issue here. The majority of those cases merely illustrate the undisputed proposition that FECA precludes suits under alternative federal tort liability statutes. *See, e.g., Heilman v. United States,* 731 F.2d 1104, 1109–10 (3d Cir.1984) (FECA precludes Federal Tort Claims Act (FTCA) suit for

---

**2.** For example, the Swine Flu Act, which created United States liability under the Federal Tort Claims Act for injuries resulting from the vaccination program, expressly precluded liability thereunder where an alternate method of compensation existed under prior law. National Swine Flu Immunization Program of 1976, § 2(k)(5)(C), 90 Stat. 1113, 1116–17 (1976) (repealed 1978). *See DiPippa v. United States,* 687 F.2d 14 (3d Cir.1982). Title VII contains no similar section.

**3.** The legislative history of section 8116(b) is to the same effect. The House Report accompanying a 1944 amendment explains:

> Subsection (a) amends section 7 of the Compensation Act so as to require an election between benefits under that act and any other benefits payable by the United States by reason of the same death or injury, *if the benefits are based on services as a Federal employee.*

H.R. No. 1364, 78th Cong., 2d Sess., *reprinted in* 1944 U.S.Code Cong. & Ad.News 1211, 1240–41 (emphasis added). Similarly, the Senate Report accompanying the amendment requiring election between FECA and armed service benefits explains:

> In addition, this section amends the Federal Employees Compensation Act to require an election of benefits in any case in which a claimant for compensation is eligible to receive any payment for benefits from the United States by reason of the same disability or death. A small number of cases have occurred in which the Bureau has found that the disability or death of an employee has resulted from an injury sustained in civilian employment by the United States and the Veterans' Administration has held that the same disability or death was caused by military service. *As a result, the United States has paid compensation twice for the same disability or death. This amendment is intended to prevent payment of dual benefits in such cases in the future.*

S.Rep. No. 1924, 86th Cong., 2d Sess. *reprinted in* 1960 U.S.Code Cong. & Ad.News 3569, 3573 (emphasis added). As discussed in the text, here there is no danger of a double recovery.

alleged negligence of United States in failing to inform employee of dangers of exposure to atomic weapons); *DiPippa v. United States,* 687 F.2d 14, 17 (3d Cir.1982) (FECA precludes suit under Swine Flu Act of 1976 for employee injuries resulting from vaccination); *Gill v. United States,* 641 F.2d 195, 197 (5th Cir.1981) (FTCA); *Pucci v. United States,* 587 F.Supp. 476, 478 (S.D.N.Y.1984) (Swine Flu Act); *Dunn v. United States,* 516 F.Supp. 1373 (E.D.Pa. 1981) (FTCA). Nothing in our conclusion that recovery of FECA benefits does not preclude suit based on alleged discrimination departs from the holding in these cases.

Only a few courts have considered the issue raised here. In *Sullivan v. United States,* 428 F.Supp. 79 (E.D.Wisc.1977), relied upon by the district court below, the court, although granting the United States' motion for dismissal on other grounds, rejected a claim that FECA was a postal worker's exclusive remedy for discrimination:

> I believe the position of the United States is incorrect. The type of injuries covered in 5 U.S.C. § 8101(5) includes injury by accident and disease; it does not appear to include such claims as are presented here for discrimination, mental distress, or loss of employment. The argument advanced by the defendant United States therefore does not entitle it to dismissal of this action.

*Id.* at 81. The Sixth Circuit approvingly referred to the conclusion reached in *Sullivan* in *DeFord v. Secretary of Labor,* 700 F.2d 281 (6th Cir.1983), a case brought under the antidiscrimination provisions of the Energy Reorganization Act. The court stated that:

> Neither the language of the statute itself [FECA] nor the policy foundations under-

lying workmen's compensation acts support a conclusion that intentional discrimination is to be viewed as causing an "injury" subject to FECA coverage.

*Id.* at 290.

We consider it particularly significant that the relief available to Miller under the two statutes is not identical. Under FECA, an employee cannot recover any pay for periods prior to the date the Secretary of Labor determines the physical disability began. 5 U.S.C. §§ 8105, 8124. Thus Miller has not recovered pay for the two periods of temporary wage loss that he alleges resulted from the activities at issue. Under Title VII, Miller may recover back pay as relief for discrimination in the period prior to his physical disability. 42 U.S.C. § 2000e-5(g). Under FECA, a federal employee can recover at most three-quarters of his or her pay. *See* 5 U.S.C. §§ 8105, 8110. Under Title VII, if an employee is entitled to front pay for wages the employee would otherwise have received, no percentage reduction applies as in FECA. *See Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 889–90 (3d Cir.1984); *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 956–57 (10th Cir.1980). FECA makes no provision for recovery of attorney's fees while, under Title VII, Miller, should he prevail, would be entitled to receive attorney's fees. 42 U.S.C. § 2000e-5(k). Finally, if we were to agree with the Postmaster General's theory that FECA recovery constitutes an election by the employee and divests the federal court of subject matter jurisdiction in Title VII cases, there would be no vehicle by which a federal employee could secure an order directing reinstatement, if warranted. Such a result would defeat the important ameliory public purpose expressed in Title VII of eliminating discrimination.[4] Given the dissimilari-

---

**4.** In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that a discharged employee could pursue Title VII relief although he had already fully pursued grievance and arbitration proceedings pursuant to a collective bargaining agreement. The Court stated:

... the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and insti-

ties of relief available under FECA and Title VII, it is evident that exclusivity would leave Miller without full compensation for his Title VII injuries.[5]

■ We reject the Postmaster General's argument that allowing Miller to pursue Title VII remedies will usurp the Secretary of Labor's power under 5 U.S.C. § 8128(b) to make final and unreviewable determinations of FECA benefits. Quite simply, this court is in no way impinging on the Secretary's authority. The Secretary has determined that Miller should receive FECA benefits and has determined the amount. Those determinations are not at issue here. They cannot affect the federal courts' jurisdiction, granted by Congress under Title VII, to consider Miller's claim for additional and different relief. We thus agree with the district court's holding that Miller's recovery of FECA benefits does not preclude his resort to the federal court under Title VII.

■ The Postmaster General requests that if we reject his first argument, we reach his alternate contention "that the district court lacks subject matter jurisdiction to award damages that are compensable or consequential in nature in an action commenced pursuant to 42 U.S.C. §§ 2000e–3, e–16." Appellant's Brief at 15.[6] The Postmaster General contends we have the power to reach this issue because it is posed by the district court's order.

Although section 1292(b) provides that a district court must certify that its order involves a controlling "question of law," our review is of orders and not of isolated legal questions. *See Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 863 (3d Cir.) (in banc), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure—Jurisdiction & Related Matters* § 3930 (1977). It follows that we are free to consider "all grounds advanced in support of the grant of summary judgment and all grounds suggested for sustaining its denial." *Struble v. New Jersey Brewery Employees Welfare Trust Fund*, 732 F.2d 325, 336 n. 10 (3d Cir.1984) (quoting *Consolidated Express, Inc. v. New York Shipping Association, Inc.*, 602 F.2d 494, 502 (3d Cir.1979), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980)); *see also Johnson v. Alldredge*, 488 F.2d 820, 822–23 (3d Cir. 1973), *cert. denied*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974).

In deciding whether to exercise that power, we are guided by prudential considerations. We have refused to reach an issue posed by an order appealed under section 1292(b) where that issue was not addressed by the district court, *see Katz v. Carte Blanche Corp.*, 496 F.2d 747, 764 (3d Cir.) (in banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), or where the issue involved factual determinations

---

tutions relating to employment discrimination.

*Id.* at 48–49, 94 S.Ct. at 1019, 1020 (footnote omitted). We recognize that the issue under FECA differs because FECA contains an explicit exclusivity clause, but the Court's emphasis on the purposes of Title VII is nonetheless of some relevance here.

**5.** Of course we do not suggest that there could be a double recovery in the event some of the relief available under FECA and Title VII were to overlap at this stage. Both FECA and Title VII guard against double recovery. *See* 5 U.S.C. §§ 8131, 8132; 42 U.S.C. § 2000e–5(g). Miller's counsel conceded at oral argument that Miller's recovery under Title VII could be credited against his FECA recovery to avoid any double recovery. We expressly do not decide what relief might be recoverable under Title VII for

lost wages if plaintiff is also recovering FECA benefits for lost wages.

**6.** The Postmaster General errs in characterizing the issue of damages as relating to subject matter jurisdiction. The Postmaster General also erred in framing the "controlling question of law" in the order certified under section 1292(b) as relating to the subject matter jurisdiction of the court to hear the Title VII claim when there has been FECA recovery. Neither issue involves subject matter jurisdiction, since the court patently has jurisdiction to hear such claims. Instead, defendant is challenging the plaintiff's right to assert the Title VII claim, an issue cognizable under Rule 12(b)(6) or, if reference to matters outside the pleading is needed, under Rule 56 of the Federal Rules of Civil Procedure.

better left to the district court, see *Link v. Mercedes Benz of North America, Inc.,* 550 F.2d at 863.

Here, the district court did not address the Postmaster General's contention that Miller seeks only compensatory damages unrecoverable under Title VII. Moreover, the determinations of what injuries Miller has suffered, the nature of the relief needed to compensate him for those injuries, and any additional relief Miller might merit as equitable make-whole relief pursuant to Title VII are determinations that should be left to the district court in the first instance. For these reasons, we do not reach the Postmaster General's second contention.[7]

## V.

### *Conclusion*

The legislative histories of FECA and Title VII make clear that the statutes create separate remedies against the United States for distinct types of injuries. The statutory language of FECA does not preclude a federal employee from pursuing Title VII remedies for discrimination, and we find no evidence that Congress intended to do so. Miller's receipt of FECA compensation does not prevent the district court from proceeding to consider his Title VII claims. Therefore, the order of the district court denying the Postmaster General's motion for summary judgment on this ground will be affirmed.

---

**7.** Even were we to apply to section 1292(b) determinations the same general analysis that we apply to interlocutory appeals arising under 28 U.S.C. § 1292(a)(1), as reflected in our decision in *Kershner v. Mazurkiewicz,* 670 F.2d 440, 449 (3d Cir.1982) (in banc), we would not reach the damages issue. The two issues presented by the Postmaster General are not so "inextricably bound" that we cannot reach one without reaching the other. Specifically, our holding today that FECA recovery does not preclude pursuit of some Title VII remedies in no way affects the ability of the Postmaster General to contest the extent to which Miller has alleged relief recoverable under Title VII.