**Terri L. NICHOLS, Plaintiff,**

v.

**Anthony FRANK, United States Postmaster General; and United States Postal Service, Defendants.**

**Civ. No. 89–635–FR.**

United States District Court,
D. Oregon.

March 15, 1990.

Monica A. Smith, Barbara J. Diamond, Elizabeth McKanna, Bennett & Durham, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for defendants.

FRYE, Judge:

The matter before the court is the motion (# 11) of defendants, Anthony Frank, United States Postmaster General, and the United States Postal Service, to dismiss this action or, in the alternative, for summary judgment against plaintiff, Terri L. Nichols.

Nichols brings this action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e *et seq.*, alleging that she was sexually harassed by a male supervisor while she was employed by the United States Postal Service.

## UNDISPUTED FACTS

Nichols became employed by the Postal Service in the City of Salem, Oregon in the Fall of 1984 as a part-time employee. On October 18, 1986, she became a full-time manual distribution clerk assigned to the night shift at the Main Post Office in the City of Salem, Oregon, which was under the supervision of Ron Francisco. Nichols is hearing-impaired and communicates through American Sign Language (ASL). Francisco is able to communicate through ASL and frequently served as Nichols' interpreter.

On April 30, 1987, Nichols filed a request for counseling with the Postal Service Equal Employment Opportunity Counselor, alleging that Francisco had been sexually harassing her for the past five months. Nichols claimed that beginning on October 27, 1986, Francisco repeatedly required her to go from the work floor to a private, locked office where Francisco forced her to perform sexual acts. On August 26, 1987, Nichols filed a formal charge of sexual discrimination against the Postal Service with the EEOC.[1]

---

1. While the investigation of the complaint filed by Nichols was being conducted by the Postal Service and the EEOC, another female employee, Marie Feskins, made similar allegations of sexual harassment against Francisco. As a result of the investigation, Francisco was temporarily transferred and then terminated by the Postal Service as of October 31, 1987. Francisco appealed the termination, which was affirmed by the Field Director of Human Resources of the Postal Service. Upon Francisco's appeal to the Merit Systems Protection Board, the Administrative Law Judge reversed the action of dismissal. The appeal of the Postal Service from the decision of the Merit Systems Protection Board was unsuccessful, and Francisco was reinstated to his supervisory position in April, 1988. At the present time, Francisco supervises the night shift at the Main Post Office in Salem, Oregon.

Nichols last worked at the Main Post Office in the City of Salem on April 14, 1987. At that time, she requested and received two weeks leave from work. Nichols alleges that as a result of the sexual harassment, she became so depressed and emotionally upset that she could not return to work. Nichols filed a workers' compensation claim under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 *et seq.* (FECA), on May 20, 1987.

Nichols has been diagnosed as suffering from an adjustment disorder, characterized by alternating and sometimes simultaneous periods of depression and extreme anxiety resulting from the sexual harassment at work. The Examiner for the Department of Labor Claims accepted that Nichols was suffering from "post-traumatic stress disorder" resulting from her employment injury. An independent medical examination conducted at the request of the Postal Service also found a connection between Nichols' disability and the alleged harassment.[2]

Nichols was granted disability status by the Office of Workers Compensation Programs (OWCP) and received benefits equal to 75% of her wages as disability compensation for the period from April 28, 1987 through November, 1989, when she was released for light duty work. On December 4, 1989, Nichols began working in a part-time, light duty position in the Post Office in the City of Beaverton, Oregon. Nichols continues to receive a pro-rated portion of her disability compensation. Nichols has not yet been released for full-time work, or for work in the Post Office in the City of Salem.

## CONTENTIONS OF THE PARTIES

The Postal Service contends that this action is moot because there is no remedy available to Nichols under Title VII, even if she prevails on the issue of liability. The Postal Service argues that with respect to monetary damages, the workers' compensation payments provided under the FECA are the exclusive source of compensation available to Nichols, and that she may not be awarded additional back pay under Title VII. The Postal Service further argues that Nichols has been as fully compensated as if she had received back pay because the 75% benefits provided by the workers' compensation program are not taxed, and Nichols did not incur work-related costs such as child care.

The Postal Service contends that Nichols is not entitled to transfer to another postal facility without loss of seniority or benefits because 1) the Postal Service is unable to provide such relief under the applicable collective bargaining agreement; 2) Nichols has not established that she would again be subjected to harassment if she returns to the post office in the City of Salem; and 3) Nichols has voluntarily relocated to the Portland, Oregon area.

Finally, the Postal Service contends that Nichols' complaint should be dismissed for failure to allege a prima facie case of sexual harassment under Title VII because there is no allegation that the Postal Service knew or should have known of the alleged harassment by Francisco.

Nichols responds that the FECA does not prohibit her from receiving back pay under Title VII, to the extent that such relief does not duplicate the benefits she has received from the workers' compensation program. Nichols argues that there are factual issues regarding the amount of back pay to which she may be entitled.

Nichols contends that under Title VII, the court has the power to order non-monetary relief, such as transfer to another worksite without loss of seniority or benefits, notwithstanding the terms of the collective bargaining agreement. Nichols argues that there are factual issues regarding her eligibility for such a transfer under the collective bargaining agreement. Nichols argues that even if the court finds that it cannot grant the requested transfer, the court may award front pay if it finds that Nichols is unable to return to the Post Office in the City of Salem. Nichols also

---

**2.** The Postal Service concedes that Nichols was granted disability status, but reserves the right to contest the finding as to the causation of Nichols' disability, which it contends was based only on the unsupported statements of Nichols.

argues that this controversy is not moot because she will be entitled to an award of attorney fees and costs if she prevails on the issue of liability.

Finally, Nichols contends that her complaint alleges a prima facie case of sexual harassment under Title VII under the theories of either "quid pro quo" sexual harassment or "hostile environment" sexual harassment.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981).

On a motion to dismiss a cause of action under Fed.R.Civ.P. 12(b)(6), the court views the complaint in the light most favorable to the pleader and must generally accept as true the facts alleged. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). The court should dismiss a claim for failure to state a cause of action only when it appears beyond doubt that the pleader can prove no set of facts supporting relief on the claim. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## ANALYSIS AND RULING

The Postal Service first argues that this action is moot because Nichols is not entitled to additional back pay since the workers' compensation payments provided under the FECA are the exclusive source of compensation available to Nichols. The FECA states in relevant part:

The liability of the United States or an instrumentality thereof under this subchapter ... is exclusive and instead of all other liability of the United States or the instrumentality to the employee ... because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a federal tort liability statute.

5 U.S.C. § 8116(c).

This language has generally been held to apply to personal injury claims of the sort covered by the Federal Tort Claims Act and the Suits in Admiralty Act. *Reep v. United States,* 557 F.2d 204, 207 (9th Cir.1977). The courts have not held that workers' compensation payments under the FECA is the exclusive source of compensation for a federal employee when the employee's injury is caused by discrimination prohibited by Title VII. *See Bennett v. Corroon & Black Corp.,* 845 F.2d 104, 106 (5th Cir. 1988). *Accord, DeFord v. Secretary of Labor,* 700 F.2d 281 (6th Cir.1983) (action for discriminatory retaliation under the Energy Reorganization Act).

The parties have not cited, and the court has not located, any Ninth Circuit decision on point. The decision of the Third Circuit in *Miller v. Bolger,* 802 F.2d 660 (3d Cir. 1986), is the most instructive for the purposes of this motion. In *Miller,* the plaintiff, a white male employed by the Postal Service, testified on behalf of a black co-worker. Miller alleged that he was subsequently injured by a supervisor and a co-worker in retaliation for his testimony. Miller applied for and received federal workers' compensation benefits. Miller then filed an action under Title VII.

The Postal Service argued that Miller could not receive back pay under Title VII because the federal workers' compensation benefits were his exclusive source of compensation. The Third Circuit rejected this argument, holding that the legislative history of the FECA shows that it was meant to preclude suits under alternative federal tort liability statutes, such as the FTCA. 802 F.2d at 663. The court held that the FECA does not preclude equitable relief, even monetary relief such as back pay and front pay, under Title VII for injuries caused by prohibited discrimination. *Id.* at 665–66. The court stated that Miller could not receive a double recovery, but left open the question whether Miller was entitled to receive the difference between the 75% benefits paid to him under the FECA and full back pay. *Id.*

The Postal Service relies on three decisions from district courts outside of the Ninth Circuit. Two of these decisions are in unpublished opinions regarding claims under the Rehabilitation Act. The third decision, *Black v. Frank*, 730 F.Supp. 1087 (S.D.Ala.1990), also appears to concern a claim under the Rehabilitation Act, although the opinion is not clear. None of these cases concern or discuss discrimination claims under Title VII. These decisions have no precedential value and very little persuasive value.

Therefore, the court will follow the Third Circuit's approach in *Miller*, and hold that to the extent that the back pay sought by Nichols does not constitute a double recovery, Nichols may pursue her claim for back pay under Title VII.

■ The Postal Service further argues that Nichols' claim for back pay is moot because Nichols has received as much compensation as she would have received had she been paid back pay because the workers' compensation benefits which were equal to 75% of her salary with the Postal Service were not taxed, and Nichols did not incur work-related costs such as child care. The extent to which back pay would overlap the workers' compensation benefits received by Nichols is a disputed issue of fact, and the court may not weigh the

evidence in this motion for summary judgment. *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 798 (9th Cir.1987).

■ Turning to the issue of non-monetary relief, the Postal Service contends that the court cannot order that Nichols be transferred to another postal facility without loss of seniority or benefits because such relief would violate the collective bargaining agreement. However, the cases cited by the Postal Service establish that where the plaintiff is the victim of illegal discrimination under Title VII, the court can award competitive seniority even if such an award violates a collective bargaining agreement. *See Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 575, 104 S.Ct. 2576, 2586, 81 L.Ed.2d 483 (1984); *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

The other arguments raised by the Postal Service on the question of a transfer concern factual issues regarding whether Nichols is entitled to a transfer to another facility, whether her transfer would violate the collective bargaining agreement, and whether she would be entitled to an award of front pay if a transfer is not possible. These are disputed factual matters which cannot be determined on this motion for summary judgment.

The final contention of the Postal Service is that this action should be dismissed because Nichols fails to allege that the Postal Service knew or should have known of the alleged harassment of Nichols by Francisco.

In her complaint, Nichols alleges that Francisco was one of her supervisors, that he had authority to give her permission to take leave, and that he generally directed her work. Complaint, para. 13. Nichols alleges that Francisco's sexual demands were unwelcome, and that Nichols reasonably believed that she was required to perform sexual acts as a condition of her employment. Complaint, para. 15. Nichols also alleges that the sexual harassment interfered with her work performance and created an intimidating, hostile and offen-

sive working environment. Complaint, para. 16.

In *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986), the Supreme Court confirmed that Title VII prohibits two types of sexual harassment: 1) harassment that is linked to the grant or denial of an economic *quid pro quo;* and 2) conduct which is sufficiently severe or pervasive as to create an abusive or hostile environment in the workplace. In *Vinson,* only harassment relating to a hostile environment was alleged by the plaintiff, a bank employee who claimed that her supervisor had subjected her to sexual harassment over a period of four years.

The *Vinson* court declined to issue a definitive rule on employer liability for harassment resulting from an abusive or hostile environment in the workplace, as the trial court had not made the necessary findings of fact. 477 U.S. at 72, 106 S.Ct. at 2408. However, the Court agreed with the EEOC that principles of agency law should guide the determination of employer liability, and that there should be a distinction between cases alleging *quid pro quo* harassment and cases alleging hostile environment harassment:

> Examination of those [traditional agency] principles has led the EEOC to the view that where a supervisor exercises the authority actually delegated to him by his employer, by making or threatening to make decisions affecting the employment status of his subordinates, such actions are properly imputed to the employer whose delegation of authority empowered the supervisor to undertake them. Thus, the courts have consistently held employers liable for the discriminatory discharges of employees by supervisory personnel, whether or not the employer knew, should have known, or approved of the supervisor's actions.
>
> The EEOC suggests that when a sexual harassment claim rests exclusively on a "hostile environment" theory, however, the usual basis for a finding of agency will often disappear.

477 U.S. at 70–71, 106 S.Ct. at 2407 (citations omitted).

The Court stated that the Court of Appeals erred in concluding that employers are always automatically liable for hostile environment harassment by supervisors, but that absence of notice to an employer does not necessarily insulate the employer from liability. 477 U.S. at 72, 106 S.Ct. at 2408.

In *EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1515–16 (9th Cir.1989), the Ninth Circuit held that "employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." The court found that the hotel was liable for hostile environment harassment of female maids where a supervisor with authority to hire, discharge and discipline employees participated in harassment and had actual knowledge of allegations of harassment. *Id.* at 1516. The court also found that the hotel should have known, or constructively knew of, the harassment because it was severe and pervasive and seriously tainted the maids' working environment. *Id.*

■ The cases regarding hostile environment harassment generally treat the issue of employer liability as a question of fact and emphasize that various circumstances may be considered in determining employer liability, such as the duties and authority of the supervisor, and the existence and efficacy of anti-discrimination policies and grievance procedures. *Hacienda Hotel* at 1516. The elements of a prima facie case for hostile environment harassment are 1) that the plaintiff was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 2) that the conduct was unwelcome; and 3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Id.* at 1514–15; *Jordan v. Clark,* 847 F.2d 1368, 1373 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989).

■ None of the cases cited by the parties require that the plaintiff allege that

the employer knew or should have known of the hostile environment harassment. Nichols' complaint alleges the three elements of a prima facie case for hostile environment harassment. The allegations are sufficient to create factual issues as to the extent of Francisco's supervisory authority which cannot be determined on the present record.

Nichols' allegations are also sufficient to support a claim for *quid pro quo* harassment. The *Vinson* decision indicated that in such cases, an employer could be liable for the actions of a supervisor whether or not the employer knew or should have known of the supervisor's actions. 477 U.S. at 70–71, 106 S.Ct. at 2407. The Ninth Circuit has not set out the parameters of employer liability for *quid pro quo* harassment, but the Eleventh Circuit recently ruled:

> The standard for determining corporate liability due to a supervisor's sexual harassment depends on the type of sexual harassment that occurs. In a *quid pro quo* case, the corporate defendant is strictly liable for the supervisor's harassment. This is logical. When a supervisor requires sexual favors as *quid pro quo* for job benefits, the supervisor, by definition, acts as the company.

*Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir.1989) (citations omitted).

■ Even if the Ninth Circuit would not impose such strict liability, it is safe to say that an employer may be held liable for *quid pro quo* harassment by a supervisor under circumstances that would not support a claim for hostile environment harassment. Thus, Nichols' allegations are adequate under the theory of *quid pro quo* harassment as well as under the theory of hostile environment harassment.

## CONCLUSION

The motion (# 11) of the Postal Service to dismiss or for summary judgment against Nichols is denied.