Terri L. NICHOLS, Plaintiff,

v.

Anthony FRANK, United States Postmaster General; and United States Postal Service, Defendants,

American Postal Workers Union, AFL–CIO, Non–Aligned Third Party.

Civ. No. 89–635–FR.

United States District Court,
D. Oregon.

Sept. 4, 1991.

Barbara J. Diamond and Elizabeth McKanna, Bennett & Durham, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty. and Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for defendants.

Gene B. Mechanic, Goldberg & Mechanic, Portland, Or., for non-aligned third party.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FRYE, Judge:

Plaintiff, Terri L. Nichols, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* She claims that the defendants, Anthony Frank, the United States Postmaster General, and the United States Postal Service (collectively, the Postal Service), are liable for the acts of her supervisor, Ron Francisco. Nichols alleges that Francisco sexually harassed her by repeatedly coercing her into engaging in sexual activity with him. Francisco denies having engaged in sexual relations with Nichols.

### FINDINGS OF FACT

Nichols is deaf and mute and communicates through American Sign Language (ASL) and writing. She began to work at the Salem, Oregon facility (post office) of the Postal Service in 1984 as a part-time employee. In the fall of 1986, she became a full-time manual distribution clerk on the night shift, where she was responsible for assisting in sorting the mail. Francisco was the superintendent in charge of the night shift. As such, he was the highest ranking manager present at the post office during the night shift. He had primary responsibility for deciding which employees would be permitted to leave work early, as well as which employees would be assigned to work overtime. He also had the authority to assign duties to the postal clerks, including assigning clerical duties that were performed off the main work floor of the post office. Francisco was the only supervisory employee on the night shift who was able to communicate with Nichols using ASL.

Nichols was assigned an immediate supervisor who reported to Francisco. However, because Francisco was able to communicate with Nichols through ASL and her immediate supervisor was not, Francisco often functioned as Nichols' immediate supervisor. Francisco instructed Nichols in the performance of her duties both on and off the main floor of the facility; granted or denied her requests for leave; and served as her interpreter on other matters concerning the Postal Service. He counseled Nichols regarding her attendance, sick leave requests, and personal problems.

By virtue of his supervisory position, Francisco had access to one of two keys that opened the two administrative offices that are located off the main floor of the post office, as well as to a master key that opened other private offices. Francisco sometimes met with Nichols in these private offices and sometimes accompanied her to a copy machine in one of the offices when he wanted her to make copies of documents for him.

On October 27, 1986, Francisco asked Nichols to copy some documents for him. He assigned another employee to perform the tasks that Nichols was performing on the main floor and went with Nichols to the copy room. While they were in the copy room, Francisco indicated to Nichols that he wanted her to engage in oral sex. Nichols responded negatively to his request, but ultimately she complied.

During the next several months, on a number of occasions Francisco asked Nichols to copy documents for him as a guise for having her engage in oral sex. Nichols did not solicit sexual contact with Francisco, and his sexual advances were unwelcome. She submitted to his wishes because she feared that if she did not, she would lose her job. She did not report the actions of Francisco to anyone because she feared that she would not be believed.

As a result of the forced sexual contact with Francisco, Nichols became depressed, anxious and irritable. She had frequent nightmares and difficulty sleeping and eating. She was unable to discuss the situation with friends or other workers because she feared retaliation by Francisco. She was afraid to tell her husband because she feared that it would harm her marriage.

In April, 1987, Nichols' husband filed for divorce. Nichols requested two weeks leave of absence so that she could deal with her family problems. On April 14, 1987, at

his request, Nichols engaged in oral sex with Francisco for the last time. Following the act, Francisco approved Nichols' request for leave.

At this point, Nichols informed her husband of the situation at work. Ultimately, the actions of Francisco were reported to the Postal Service Manager of the Equal Employment Opportunity Complaints Processing in Portland, Oregon. Nichols also notified the American Postal Workers Union of the actions of Francisco.

Nichols was on a medical leave of absence from April 14, 1987 until December 4, 1989, when she resumed part-time employment at the post office in Beaverton, Oregon where she is currently employed. Francisco is employed at the post office in Salem, Oregon. Nichols and her husband have divorced, and she has sole custody of their children.

## CONCLUSIONS OF LAW

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is a form of sex discrimination that is prohibited under the statute. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Courts have recognized two forms of unlawful sexual harassment; *quid pro quo* and hostile work environment harassment. *Id.* at 65–66, 106 S.Ct. at 2404–2405; *Henson v. City of Dundee*, 682 F.2d 897 908–10 (11th Cir.1982). The elements of a *prima facie* case for hostile work environment harassment are:

1) that the plaintiff was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 2) that the conduct was unwelcome; and 3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

*Nichols v. Frank*, 732 F.Supp. 1085, 1090 (D.Or.1990), *following EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1514–15 (9th Cir. 1989).

■ The court finds that Nichols was subjected to repeated oral sexual advances by Francisco, and that these advances were always unwelcome. These repeated and unwelcome sexual advances caused Nichols to suffer psychological injury. The court further finds that the conduct of Francisco was sufficiently severe to alter the conditions of Nichols' employment and to create an abusive working environment. Therefore, Nichols has established that she was subject to "hostile work environment" sexual harassment.

■ Whether the Postal Service is liable for the acts of Francisco which constitute hostile work environment sexual harassment is determined by applying the principles of the laws of agency. *See Meritor Sav. Bank v. Vinson*, 477 U.S. at 72, 106 S.Ct. at 2408. Pursuant to these principles, an employer is liable for the acts of an agent where the employee is acting within the scope of his employment. Restatement (Second) of Agency, § 219 (1958). The Ninth Circuit has identified three factors to be considered in determining whether an agent is acting within the scope of his employment:

1) whether the act occurred substantially within the time and space limits authorized by the employment; 2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and 3) whether the act is of a kind which the employee was hired to perform.

*Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1375 (9th Cir.1990), *quoting Chesterman v. Barmon*, 305 Or. 439, 753 P.2d 404, 406 (1988).

Each time Francisco asked Nichols to perform sexual acts, both Nichols and Francisco were on duty at the post office in Salem, Oregon. Nichols has established that the acts occurred substantially within the time and space limits of Francisco's employment.

Jack Witt, Francisco's supervisor, testified that Francisco was sometimes sloppy in his paperwork; that he attributed this sloppiness to Francisco's attempt to per-

form too many tasks; and that he had suggested that Francisco enlist various postal clerks to assist him off the floor with paperwork so that he would not have to perform the work himself. Thus, in requesting the assistance of Nichols in copying documents, Francisco was acting, at least in part, by a purpose to serve the Postal Service.

As to the third prong required for a finding of employer liability, the Ninth Circuit has recognized that the specific act giving rise to an intentional tort claim will itself rarely be of a kind which the employee was hired to perform. *Dias v. Sky Chefs, Inc.,* 919 F.2d at 1375. Therefore, the Ninth Circuit has determined that the appropriate inquiry is whether the employee committed the tort "while performing, or in connection with, his job responsibilities." *Id.* The demands of Francisco that Nichols engage in oral sex were made simultaneously with the request that she assist him in the performance of the employment-related duties of making copies of documents.

In summary, Francisco was the highest ranking employee routinely present at the Salem, Oregon post office during the night shift. He had the authority to grant requests for leave, assign overtime work, assign duties to postal clerks (including Nichols), and discipline and make recommendations as to the discipline of postal clerks. When Francisco made unwelcome sexual contact with Nichols, he was an agent of the Postal Service. He committed the acts that constitute hostile work environment sexual harassment while performing his job and in connection with the responsibilities of his job. Therefore, the Postal Service is liable under Title VII for the actions of Francisco.

## REMEDY

▉ The Postal Service contends that Title VII does not provide a remedy for Nichols because the worker's compensation payments that Nichols received under the Federal Employees' Compensation Act (FECA) are the exclusive source of compensation available to her. This court has already ruled, based on the holding of the Third Circuit in *Miller v. Bolger,* 802 F.2d 660 (3rd Cir.1986), that to the extent that the back pay sought by Nichols under Title VII does not constitute a double recovery of back pay in light of her FECA payments, Nichols may pursue a claim for back pay under Title VII. The court adheres to its prior ruling on this issue. *Nichols v. Frank,* 732 F.Supp. 1085 (D.Or.1990).

### Back Pay Award

▉ Because of the effects of the sexual harassment, Nichols was unable to work during the period from April 14, 1987 to December 4, 1989. Following her return to work on December 4, 1989, she has been unable to work weekend and evening hours due to medical restrictions. Nichols is entitled to receive back pay from the time that she became unable to work because of the sexual harassment through the present. This award should reflect the base wage rate that she would have received if she had worked full time during this period, including the night-shift differential of 10% and the weekend-shift differential of 25%. This award must be reduced by 1) the amount of money that Nichols received pursuant to her Workers' Compensation claim; and 2) the amount of money that she has earned since she returned to work on December 4, 1989. Nichols represents that the parties agree that based on this formula for calculating compensation, the total back pay award to which Nichols is entitled as of June 14, 1991 is $42,238.36. Hearing no objection from the Postal Service, the court accepts this representation. Back pay shall be calculated at the same rate through the date of the judgment in this matter.

### Prejudgment Interest Award

▉ Title VII authorizes prejudgment interest as part of a back pay remedy in suits against employers, including the Postal Service. *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). The Ninth Circuit has approved the following method for calculating an award of prejudgment interest in a case such as this.

*Fadhl v. Police Dept. of San Francisco,* 553 F.Supp. 38 (N.D.Cal.1982), *aff'd,* 859 F.2d 649 (9th Cir.1986). The formula provides for the calculation of interest "from the end of each calendar quarter, on the amount then due and owing, at 90% of the average prime rate for the year in which the calendar quarter occurs," with the figure for the prime rate to be obtained from the Federal Reserve Bank. *Richardson v. Restaurant Mktg. Assocs., Inc.,* 527 F.Supp. 690, 698 (N.D.Cal.1981). Nichols represents that by using this formula, the total amount of interest due through June 14, 1991 is $9,746.21. Hearing no objection from the Postal Service, the court accepts this representation. Interest shall be calculated at the rate outlined above through the date of the judgment in this matter.

### Accrued Benefits

Nichols seeks compensation for annual and sick leave benefits that would have accumulated from the date she left work, on April 14, 1987, until June 14, 1991. The parties agree as to the total amount of leave accrued by Nichols during this period of time; however, they disagree as to the amount that should be deducted because of the annual and sick leave that Nichols has used since she returned to work. Nichols contends that she has used substantial amounts of leave time in preparing for this suit and dealing with medical problems that are the result of the sexual harassment. She asks that the leave time she has taken that is attributable to the sexual harassment not be deducted from any award of accrued leave.

■ The court finds that Nichols is entitled to that amount of annual and sick leave that she would have accrued during the period from April 14, 1987 to June 14, 1991. However, this amount of annual and sick leave shall be offset by the amount of annual and sick leave that she has used since she returned to work on December 4, 1989.

■ Nichols also claims that she is entitled to recover benefits that she would have received under the Federal Employees Retirement System (FERS) had she been able to work. The evidence presented at trial was that even if an employee makes no contribution to this fund, the Postal Service contributes 1% of the employee's base salary to the fund. Nichols is entitled to receive from the Postal Service an amount equal to 1% of her base pay, plus interest, for the period during which she was unable to work and therefore did not receive any FERS benefits.

### Front Pay Award

Nichols contends that she is unable to work night and weekend shifts because of medical restrictions that are the result of the sexual harassment. She seeks an award in the amount of the difference between her actual earnings and what she would have earned had she been able to continue to work evenings and weekends.

■ "Title VII is equitable in nature and prohibits recovery of compensatory damages, damages for emotional distress, or punitive damages against federal employers." *McGuire v. United States Postal Serv.,* 749 F.Supp. 1275, 1285 (S.D.N.Y.1990). Monetary recovery under Title VII is limited to back pay. *Id.* Furthermore, the court finds that Nichols has failed to establish that but for the sexual harassment, she would have continued to work night and weekend shifts. This finding is based on the fact that Nichols is now divorced and has the sole custody of her young children. Nichols is not entitled to an award of front pay.

### Post–Judgment Interest

■ Nichols is entitled to post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961 on any amount awarded in the judgment that has not been paid within sixty days of the date of the judgment.

### Injunctive Relief

■ Nichols seeks an injunction ordering that the discrimination to which she was subjected not be repeated. Injunctions are designed to remedy continuing wrongs. Francisco is employed at the post office in

Salem, Oregon. Nichols is employed at the post office in Beaverton, Oregon. Nichols has not demonstrated a likelihood that she will be forced to return to the post office in Salem, Oregon or that she will be placed in a situation where harassment is likely to be repeated. Therefore, the court finds that injunctive relief is not warranted.

### Attorney Fees and Costs

Nichols has requested an award of reasonable attorney fees and costs expended in this case, including the costs of interpreters to facilitate her representation. An application should be filed with the court in support of this request.

### CONCLUSION

The court finds that Nichols has carried her burden of proving by a preponderance of the evidence that she was subjected to hostile work environment sexual harassment under Title VII, and that under the circumstances of this case, the Postal Service is liable for the actions of its agent who committed the sexual harassment. The court finds that as a result of the sexual harassment, Nichols was unable to work during the period from April 14, 1987 to December 4, 1989.

The court finds that:

1) Nichols is entitled to receive an award of back pay in the amount of the base wage rate that she would have received if she had worked full time during this period, including the night-shift differential of 10% and the weekend-shift differential of 25%. This award must be reduced by a) the amount of money that Nichols received pursuant to her Workers' Compensation claim, and b) the amount of money that she has earned since she returned to work on December 4, 1989. The total back pay award to which Nichols is entitled as of June 14, 1991 is $42,238.36. Back pay shall be calculated at the same rate through the date of the judgment in this matter.

2) Nichols is entitled to receive an award of prejudgment interest to be calculated using the formula set forth in *Richardson v. Restaurant Mktg. Assocs., Inc.*, 527 F.Supp. at 698. Using this formula, the total amount of interest due through June 14, 1991 is $9,746.21. Interest shall be calculated through the date of the judgment in this matter.

3) Nichols is entitled to receive an award of annual and sick leave in the amount that she would have accrued if she had been able to work during the period from April 14, 1987 to June 14, 1991, offset by the amount of annual and sick leave that she has used since she returned to work on December 4, 1989.

4) Nichols is entitled to receive an award in an amount equal to 1% of her base pay, plus interest, for the period from April 14, 1987 to December 4, 1989, during which time she was unable to work and therefore did not receive any FERS benefits.

5) Nichols is entitled to receive an award of post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961 on any amount awarded in the judgment that has not been paid within sixty days of the date of the judgment.

The foregoing opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a). Counsel for Nichols shall prepare the appropriate judgment.