**Frederick L. PITCHFORD and Alberta Pitchford, Plaintiffs,**

v.

**Hazel KITCHENS, Individually and as Postmaster of Earle, Arkansas; Dean Buchanan, Individually and as Division Manager/Postmaster, Memphis Division, United States Postal Service; J.F. Thomas, Individually and as District Manager, Mid–South District, United States Postal Service; and, Preston R. Tisch, Individually and as Postmaster General, United States Postal Service, Defendants.**

No. J–C–88–276.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Dec. 29, 1994.

Ronald C. Wilson, Perkins, Wilson & Associates, West Memphis, AR, for plaintiffs.

Phillip W. Eglsaer, Office of Field Legal Services, U.S. Postal Service, Memphis, TN, for defendants.

## *MEMORANDUM OPINION*

ROY, District Judge.

Plaintiff Frederick Pitchford, a black male, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c), alleging that he has been given fewer work hours, less desirable job assignments and less favorable treatment than similarly-situated white workers on ac-

count of his race and in retaliation for filing charges of discrimination with the Equal Employment Opportunity Branch of the United States Postal Service and the Equal Employment Opportunity Commission ("EEOC"). Although Pitchford also sought herein to advance claims pursuant to 42 U.S.C. §§ 1981 & 1983, as well as the Fourteenth Amendment to the United States Constitution, those claims were dismissed by this Court's Order dated August 2, 1993.

Plaintiff Alberta Pitchford, mother of Frederick Pitchford, advances a claim under 42 U.S.C. § 1981, contending that she was injured by certain actions of defendant Hazel Kitchens, the former Postmaster of Earle, Arkansas. Ms. Pitchford also sought to advance tort claims pursuant to the common law of the State of Arkansas, but those claims were dismissed by Order of the Court entered April 5, 1994, leaving only her claim under § 1981 for determination herein. Specifically, Ms. Pitchford contends that Ms. Kitchens wrongfully and maliciously advised the Postal Service Inspection Service ("Inspection Service") that Pitchford had falsely reported that he was not living with his mother when in actuality he was, which resulted in an investigation by both the Inspection Service and the Farmers Home Administration ("FHA"). Ms. Pitchford claims that Ms. Kitchens unlawfully interfered with her on-going relationship with FHA.

Defendants deny any wrongdoing with respect to its conduct toward either plaintiff and argue that neither is entitled to the relief sought on the claims advanced herein. After fourteen days of a bench trial, and an extended post-trial briefing schedule, this matter is now ripe for adjudication. The Court will first address the 42 U.S.C. § 1981 claim filed on behalf of Ms. Pitchford.

In the complaint, Ms. Pitchford contends that in April 1984 Ms. Kitchens caused false and malicious information to be forwarded to FHA for harassment and intimidation based upon a racial animus and for the purpose of adversely affecting Ms. Pitchford's housing subsidy and her relationship with FHA, all in violation of 42 U.S.C. § 1981. At the time of Ms. Kitchens' alleged wrongful conduct, until

its amendment in the Civil Rights Act of 1991, that statute provided, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1988 Ed.).

■ In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court of the United States held that "§ 1981 does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 491 U.S. at 171, 109 S.Ct. at 2369. The allegations of the complaint in this cause do not fall within either category discussed in *Patterson*, for the contract between Ms. Pitchford and FHA was formed well before April 1984 and there is no contention that Ms. Kitchens did anything to interfere with Ms. Pitchford's enforcement of that contract. Clearly, Ms. Pitchford's claim is not cognizable under § 1981 as it was worded and interpreted prior to its 1991 amendment.

Section 101 of the 1991 Act brings within § 1981's prohibition racial discrimination in all phases and incidents of the contractual relationship, including the type of conduct alleged here. However, the Supreme Court has plainly ruled that § 101 of the 1991 Act does not apply to cases that arose before its enactment. *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). The Court stated in *Rivers* that "because it creates liabilities that had no legal existence before the Act was passed, § 101 does not apply to preenactment conduct." *Id.*, at —— –——, 114 S.Ct. at 1519–20. Because Ms. Kitchens reported the matter to FHA in 1984, § 1981 as amended in the 1991 Act cannot be applied to Ms. Pitchford's claim.

■ The Court further finds that, even absent the legal bar to it, defendants still would be entitled to judgment upon this claim. The testimony revealed that when Ms. Kitchens acquired the information concerning Pitchford's change of address form and his statements to a co-worker concerning the matter, she was concerned about the possibility of a fraud being perpetrated on FHA through the use of postal records. Based on that concern, she took the reasonable step of contacting the Inspection Service. Inspector John Hannah testified that both postal and general government regulations required Ms. Kitchens to notify the chief inspector of the situation. Having become aware of information which suggested a possible impropriety or fraud, Ms. Kitchens had an obligation and duty to take the steps she did. The evidence simply does not support the contention that she acted upon a racial animus in contacting the Inspection Service.

Accordingly, the Court finds that defendants are entitled to judgment as a matter of law upon that aspect of the complaint. The relief sought therein on behalf of Ms. Pitchford is denied.

Frederick Pitchford (hereinafter "Pitchford") has been employed by the United States Postal Service ("Postal Service") in Earle, Arkansas from October 1981 to the present as a parttime flexible ("PTF") clerk. Defendant Kitchens was appointed Postmaster of the Earle Post Office in February 1982 and remained in that position until October 1991 when she requested and was granted a permanent reassignment to the State of Ohio.

Pitchford maintains that Kitchens subjected him to repeated episodes of racial discrimination and harassment during her tenure in Earle, ranging from inadequate training and undesirable work assignments to unreasonable denial of leave requests and unfair discipline. Ms. Kitchens asserts that none of her conduct toward Pitchford was motivated by a racial animus; rather, she contends that all actions taken with respect to Pitchford were consistent with what she viewed as her duty to operate the Earle postal facility in a fair and professional manner.

The American Postal Workers Union, AFL–CIO, of which Pitchford is a member, was a party to a collective bargaining agreement with the Postal Service at all relevant times herein. Pursuant to the collective bargaining agreement, Pitchford caused at least two, perhaps more, grievances concerning action by Ms. Kitchens to be filed with the Postal Service. Those grievances were settled between Pitchford's union representative and the Labor Relations Branch of the Postal Service, basically upon the terms requested by Pitchford.

In addition, the record reflects that Pitchford filed a number of charges of racial discrimination and retaliation with the EEO Branch of the Postal Service and with the EEOC from 1984 to 1988. While it appears that all such charges were decided adversely to his position, Pitchford did not avail himself of his right to seek recourse in the courts on any of them until January 22, 1987. Although Pitchford filed EEO charges upon several of the alleged discriminatory acts set out in that complaint, following the termination of the administrative processes he failed to initiate litigation in the district courts within the applicable time limits provided in 42 U.S.C. § 2000e–16(c), which prior to the 1991 Act was thirty (30) days.

Apparently in response to a motion to dismiss pointing out the lack of timeliness of Pitchford's first suit, Pitchford filed a second action on November 7, 1988. That complaint included the allegations set out in the first action, as well as new allegations concerning incidents which occurred in 1987 and pursuant to which he filed EEO charges in 1988.[1] Consistent with the applicable law, Pitchford dropped the administrative review of his 1988 charges after 180 days had elapsed since their filing and chose instead to file the second lawsuit in this Court. While Pitchford's earlier charges involved allegations of racial and reprisal discrimination, the 1988 charges exclusively addressed reprisal, or, as stated

---

1. The 1987 incidents were also the subjects of some of Pitchford's union grievances, which, as noted previously, were settled by the parties' representatives.

elsewhere, retaliation, on account of the previous EEO filings.

■ Defendants maintain that Pitchford should not be permitted to pursue the racial discrimination claim in this cause due to his failure to bring a judicial action on his race charges within the filing deadlines of Title VII. Instead, defendants contend that just the reprisal claim was properly included in the complaint since it was the only one filed in a timely manner following the administrative proceedings. In response to that point, Pitchford argues that the race claim can properly be litigated in this case based upon the theory of continuing discrimination, which in some limited circumstances permits a party to include previous incidents of discrimination, even though not pursued as fully or timely as the law requires, where those incidents were a part of a continuing pattern of discrimination and the aggrieved party did fully and timely pursue later incidents at both the administrative and judicial levels.

■ The United States Court of Appeals for the Eighth Circuit has stated that "[a] plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Williams v. Little Rock Municipal Water Works,* 21 F.3d 218, 222 (8th Cir.1994). The Court is of the opinion that the facts and circumstances of this case do not justify application of the "continuing violation" rule. The Court finds the claims to have been too dissimilar to permit use of the rule, and, perhaps more importantly, the Court finds that the alleged violations were not, and, inasmuch as Pitchford remains to this day in the employ of the Postal Service, are not, sufficiently "continuing" in character to warrant a suspension of the procedural and filing requirements of the statute with respect to Pitchford's previous claims of discrimination. As has been recognized by the United States Court of Appeals for the Eighth Circuit, "to construe loosely the 'continuing' theory would undermine the aim of the statute of limitations." *Richard v. McDonnell Douglas*

*Corporation,* 469 F.2d 1249, 1253 (8th Cir. 1972).

The decision of the Eighth Circuit in *Williams, supra,* is particularly instructive on this issue. In *Williams,* the plaintiff filed an EEOC charge based on race in 1987 against the municipal agency by which she was, and apparently still is, employed following denial of a promotion which she had sought. The EEOC found no reasonable cause to believe there had been a violation of Title VII and issued Williams a notice of right to sue. However, she did not file a lawsuit at that time. In 1990, after again being denied a merit raise and promotion, Williams filed an EEOC charge based upon retaliation. The EEOC again found no merit in the charge and issued the right to sue notice. This time Williams did file suit against her employer, alleging discrimination on the bases of race and retaliation.

Williams' employer moved for partial summary judgment contending, *inter alia,* that the allegations of race discrimination set out in her complaint were beyond the scope of the EEOC complaint which alleged only retaliation. The district court agreed and the race claims were dismissed. In affirming the district court's ruling on the motion and finding that Williams' claims of race discrimination were separate and distinct from her claims of retaliation, the Eighth Circuit noted that "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams,* 21 F.3d at 223 (quoting *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 836 (7th Cir.1985)).

Accordingly, consistent with the holding in *Williams,* the Court finds that only Pitchford's retaliation claim is properly before the Court in this Title VII action and, thus, defendants are entitled to judgment as a matter of law upon Pitchford's claim of racial discrimination.[2] The judgment shall so reflect.

2. Although the Court declined to make this determination immediately prior to the start of trial in

Pitchford's retaliation claim stems from two incidents in 1987, one involving a dispute over an audit of his stamp stock and the other a directive from Ms. Kitchens that he furnish medical documentation of an injury when he refused to carry mail on account of a sprained ankle. As noted previously, these matters were the subjects of both union grievances and charges of discrimination with the EEO Branch of the Postal Service and the EEOC. Again as noted, Pitchford properly, and in a timely manner, filed suit on these charges in this Court following the administrative processes.

■ Although defendants admit that Pitchford complied with the statutory requirements in including these allegations in his second complaint, they argue that, inasmuch as he has received full relief for these claims through the collective bargaining grievance process, he is entitled to no further relief thereon from this Court and the claim should be dismissed. In *Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir.1981), the Fifth Circuit Court of Appeals held that a plaintiff who previously settled two grievances and successfully arbitrated another could not later pursue a Title VII action seeking the same relief he had obtained through the settlement and arbitration processes.

That appears to be precisely what has happened in the case *sub judice,* for Pitchford grieved both the stamp stock audit and the medical authorization matters and received the entire remedy he requested, including reimbursement of all money he was out as a result of those incidents. Although he also set out a claim for injunctive relief on this claim in his second complaint, Ms. Kitchens' reassignment and the apparent lack of any further such incidents since that time call into question the necessity of such relief. Accordingly, consistent with the rationale of *Strozier,*[81101557] that minor point does not by itself mandate a different decision on this question. *Id.,* at 427. Thus, the Court finds that by virtue of a favorable settlement through the collective bargaining grievance process Pitchford has already obtained all

the relief he is entitled to receive for the 1987 incidents and the reprisal claim based thereon must be dismissed.

In view of the Court's decision that for procedural reasons Pitchford is entitled to no relief on his Title VII claim, the Court in not required to discuss its merits of that claim. The Court chooses, however, to briefly comment upon the evidence adduced with respect to the claims of racial discrimination and retaliation. But, the Court will not attempt to list or discuss all the specific instances of Ms. Kitchens' alleged wrongful conduct cited by Pitchford. Likewise, the Court will not specifically address each of the purported shortcomings or transgressions of Pitchford which Ms. Kitchens testified caused her to take the steps she did regarding him. The Court instead will briefly discuss Pitchford's working relationship with Ms. Kitchens and other postal personnel and some examples of the conduct of Pitchford with respect thereto.

Most of the former and present co-workers of Pitchford who testified at trial stated that he is an individual with considerable ability and intelligence who was capable of performing his job quite well when he desired, but often chose to work at an extremely slow pace. A number of witnesses testified that Pitchford seemed especially prone to work slowly when Ms. Kitchens was present.

One witness, Virginia Waldo, stated that Pitchford "carried things too far" and was antagonistic and disrespectful to Ms. Kitchens, often "talk[ing] to Ms. Kitchens worse than anyone would talk to a dog." Ms. Waldo testified that she was on friendlier terms with Pitchford than Ms. Kitchens until she observed his abusive behavior, at which time she ceased considering him a friend.

Pitchford also behaved in an intimidating and hostile manner toward his co-workers. Several witnesses testified about an incident in which Pitchford physically threatened Lamar Morgan and attempted to get Morgan to "settle the matter outside." More serious, however, is the testimony of Rona McCutchin and Jeff Frisbee that Pitchford made death threats against them and other co-workers if

1993, the evidence presented and a review of *Williams* have convinced the Court that this deci-

sion is both appropriate and required under the law.

they testified against him or the case did not go as he hoped.

Frisbee further testified that Pitchford resented working for a woman, which was corroborated by Ms. McCutchin and Jana Davis, and that Pitchford told him that "women should be at home having kids." Nearly all of these co-workers testified that Pitchford was usually disrespectful, uncooperative, confrontational and intentionally slow with his work when Ms. Kitchens was present in the post office.

Pitchford specifically alleges in his complaints that he was discriminated against in the training he received, in the work hours he was assigned, and in the approval of leave requests. Defendants exhibits reveal that Pitchford actually received more training than did Ms. Davis, the individual with whom he compares himself to support his allegation of discrimination. Further, a review of time cards at the Earle Post Office by Tommie Nix, a labor relations specialist with the Postal Service, indicated no disparity in the assignment of work hours, despite Nix's initial skepticism about the matter. Similarly, Ms. Kitchens' testimony about a detailed review of leave requests established that Pitchford was treated in a fair and evenhanded fashion with respect to requests for leave.

The more credible and persuasive evidence adduced at trial establishes that Pitchford has not been the victim of unlawful racial or reprisal discrimination. Rather, it is quite clear that the actions taken by Ms. Kitchens were her attempts to operate the Earle Post Office in an efficient and professional manner consistent with postal regulations. Any adverse consequences or job-related sanctions which Pitchford suffered were the direct result of his willful failure to perform his duties properly and his frequent confrontational and disruptive behavior.

Upon all of the foregoing, the Court finds that defendants are entitled to judgment upon all of plaintiffs' claims. Judgment in accordance with this Opinion shall be entered contemporaneously herewith.