**James F. REIDY, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General,
United States Postal Service,
Defendant.**

**No. CV 95–0578 (ADS).**

United States District Court,
E.D. New York.

July 30, 1997.

Richard M. Bronstein, Central Islip, NY, for Plaintiff.

Zachary W. Carter, U.S. Attorney by Gwen Pollak, Asst. U.S. Atty., Brooklyn, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This employment discrimination action arises from the claims of the plaintiff James Reidy ("Reidy" or the "plaintiff"), that he was unlawfully denied overtime assignments in his job as a postal clerk in violation of the Rehabilitation Act of 1974, 29 U.S.C. § 791 et seq. Presently before the Court is the motion of the defendant, Marvin Runyon, the Postmaster General of the United States (the "Post Office," "Postal Service" or "defendant"), for summary judgment pursuant to Fed.R.Civ.P. 56.

### I. *Background*

The plaintiff, James Reidy, has been employed by the Post Office as a manual clerk since 1977. In this capacity, his responsibilities include distribution of the mail, which requires, without limitation, standing, sitting, lifting up to 70 pounds, the distribution of letters, flats and parcels, "sweeping the mail," and transportation of mail. "Sweeping" apparently involves moving mail to different receptacles within the facility so that it may be shipped to other parts of the country.

Since he began working with the Postal Service, the plaintiff has been a member of the American Postal Workers Union (the "Union"). Originally he was assigned to the postal facility in Smithtown, New York. In 1987, he was transferred to the Mid–Island Processing facility in Melville where he was employed at the time of the alleged discriminatory acts.

On April 9, 1986, the plaintiff injured his ankle and lower back. The parties dispute whether this injury occurred on the job. On May 12, 1986, Reidy suffered a herniated cervical disk when he fell on the floor while carrying the mail at work. This injury resulted in his being out of work for six months. After the injury, the plaintiff filed a workers' compensation claim and received approximately $8,709 in benefits. Reidy maintains that as a result of this injury he is "unable to rotate [his] neck and [is] restricted in lifting heavy objects and in twisting and turning in certain directions." Affidavit of James Reidy, Jan. 14, 1997 ¶ 2.

Because of his neck injury, the plaintiff was placed on "limited duty." In this capacity, some of his regular work duties were restricted. The parties disagree with respect to the amount of work the plaintiff is able to do. According to the defendant, Reidy was restricted from: (1) carrying heavy objects including heavy or full trays of mail, standard flat cases, or flat buckets containing mail, as well as throwing parcels or "dropping" pouches of mail; (2) sweeping the mail; (3) standing for prolonged periods of time; (4) throwing regular cases of mail; (5) sitting without back support; or (6) moving equipment. Reidy admits that he is not expected to lift "[e]xceptionally heavy trays" of mail or sweep the mail, which requires a certain amount of twisting or bending. However, the plaintiff asserts that, contrary to the defendant's contentions, he is able to "throw" full cases of mail, albeit with some difficulty. He also denies requiring extra back support while sitting, and maintains that moving equipment is not part of his duties as a manual clerk.

According to the Complaint, between November 11, 1991 and April 13, 1993, the plaintiff has been denied work on overtime shifts despite his seniority and his indicated preference for these assignments. During his deposition, Reidy stated that he filed a grievance with the Union on each occasion that he was denied an overtime shift. He further contends that other employees, namely Chicha Cannon and Mary Butterfield, who were also assigned to restricted duties, were similarly denied overtime. The plaintiff's grievances were settled in 1993 and he received between 50 and 60 percent of the

overtime pay he sought. The settlement was paid by checks which Reidy admittedly cashed.

On March 10, 1993, the plaintiff contacted an EEO counselor for the first time regarding his discrimination charges. On February 10, 1995, Reidy commenced this lawsuit alleging that his rights had been violated under the Rehabilitation Act of 1973 and 42 U.S.C. § 1983, claiming that he is entitled to the difference between the compensation he received as a result of the settlement, and the actual amount of overtime compensation he sought. The Section 1983 claim was subsequently discontinued leaving the Rehabilitation Act as the sole cause of action.

The Post Office moves for summary judgment on several grounds. Initially, the defendant argues that Reidy's claims are barred as a result of the settlement of his union grievances. In the alternative, the Post Office argues that the plaintiff's claims are untimely and that he has failed to exhaust his administrative remedies so that this Court lacks subject matter jurisdiction to hear this case. Further, the defendant contends that summary judgment is appropriate because the plaintiff is unable to establish a prima facie case of employment discrimination. Finally, the Post Office asserts that Reidy's claims are barred because the workers' compensation benefits he received operate as an exclusive remedy precluding any related claims.

## II. *Discussion*

### A. *Summary judgment standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laborato-*

ries, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. City of New York,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd., Partnership,* 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. *The Postal Service's motion*

■ At the outset, the Court notes that claims brought pursuant to the Rehabilitation Act are subject to the same burden shifting analysis as other federal employment discrimination cases. Initially, the claimant must establish a prima facie case of discrimination. *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* 513

U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment decision. *Id.* If the employer satisfies this threshold requirement, the burden then shifts back to the employee to show that the employer's stated reason is actually a pretext for unlawful discrimination. *Id.*

As set forth above, the Post Office moves for summary judgment on four grounds: (1) that the plaintiff's claims are barred by a prior settlement of Reidy's union grievances; (2) that Reidy has failed to exhaust his administrative remedies; (3) that the plaintiff has failed to establish a prima facie case of employment discrimination under the Rehabilitation Act; and (4) that Reidy's claims are barred by the federal workers' compensation statute. The Court will address each of these arguments in turn.

### 1. *Settlement of the grievances*

■■■■ Initially, the Post Office argues that the plaintiff's claims are barred as a result of the settlement of his grievances through the Union. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974), the Supreme Court recognized that an employee's right to file a federal lawsuit under Title VII will not be foreclosed if he "first pursues his grievance to final arbitration under the terms of a collective-bargaining agreement." In reaching this conclusion however, the court recognized that "presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement...." *Id.* at 52, 94 S.Ct. at 1021. In making such a determination the trial court must "determine at the outset that the employee's consent to the settlement was voluntary and knowing." *Id.* at 52 n. 15, 94 S.Ct. at 1022 n. 15. Waiver of such federal remedial rights will not be lightly inferred. *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976). Once an individual executes a valid settlement agreement, he cannot subsequently seek both the benefit of the agreement and the opportunity to pursue the claim he agreed to settle. *Wilmes v. United States Postal Serv.*, 810 F.2d 130, 132 (7th Cir.1987), quoting, *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir.1984); *Melendez v. Horizon Cellular Tel. Co.*, 841 F.Supp. 687, 691 (E.D.Pa.1994).

The circuits do not appear to be in agreement as to the standard to be applied when determining whether a general release was "knowing and voluntary." *Torrez v. Public Serv. Co.*, 908 F.2d 687, 689 (10th Cir.1990). The majority of the circuits, including the Second Circuit, consider a totality of the circumstances when assessing a plaintiff's knowledge and voluntariness. *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir.), *cert. denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (applying the Age Discrimination in Employment Act); *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir.), *cert. denied*, 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995); *Torrez*, 908 F.2d at 689–90; *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir.1989), *cert. denied*, 498 U.S. 854, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988); *Rogers v. General Elec. Co.*, 781 F.2d 452, 456 (5th Cir.1986). Factors considered in this analysis include: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff has access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff consulted with or was represented by an attorney; and (6) how the consideration given compares with the amount of recovery otherwise sought. *Bormann*, 875 F.2d at 403. This list is not exclusive. *Id.*

Other courts apply ordinary contract principles, focusing on the language of the settlement agreement. *See O'Shea v. Commercial Credit Corp.*, 930 F.2d 358, 362 (4th Cir. 1991), *cert. denied*, 502 U.S. 859, 112 S.Ct. 177, 116 L.Ed.2d 139 (1991); *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1044 n. 10 (6th Cir.), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986); *Pilon v. University of Minn.*, 710 F.2d 466 (8th Cir.1983). However, as the Tenth Circuit recognized in *Torrez*, although cases such as *Runyan* and *Pilon* profess to apply

general contract principles, the courts nevertheless considered other outside factors in reaching their conclusions. *Torrez,* 908 F.2d at 689 n. 2, citing, *Coventry v. United States Steel Corp.,* 856 F.2d 514, 522 n. 9 (3d Cir. 1988).

Setting forth these standards however, only begins the analysis. In the arbitration context, the Fifth Circuit has recognized that where a plaintiff; who was represented by counsel, settles his union grievances for an award of back pay, he may not then seek, the same award in an employment discrimination lawsuit. *See Strozier v. General Motors Corp.,* 635 F.2d 424, 426 (5th Cir.1981). According to the *Strozier* court, the "plaintiff's agreement to and acceptance of the settlement forecloses the present lawsuit with respect to the ... disciplinary actions, even though the statutory claims [Title VII and 42 U.S.C. § 1981] were not expressly covered. The remedy sought and settled was the precise remedy sought in this lawsuit." *Id.* In other words, the plaintiff may not later request additional monetary relief simply because he is dissatisfied with his settlement. *Id.; accord Pitchford v. Kitchens,* 873 F.Supp. 167, 172 (E.D.Ark.1994); (settlement of grievance arbitration precludes subsequent discrimination claim seeking the same remedy); *Anderson v. Frank,* 755 F.Supp. 187 (E.D.Mich.1991) (granting summary judgment to Post Office where plaintiff-postal worker settled grievance, and where subsequent Title VII action sought similar relief).

At first blush, this principle appears straightforward. However, in *Perez v. State of Maine,* 760 F.2d 11 (1st Cir.1985), the plaintiff, Nazario Perez, filed suit in state court alleging unlawful employment discrimination. The case was settled with an agreement in which Perez expressly discontinued the state court action in "full and final settlement of *this matter.*" *Id.* at 12 (emphasis in original). He subsequently filed suit in federal court under Title VII, 42 U.S.C. § 2000e et seq. Then Circuit Judge Stephen Breyer, writing for the panel, affirmed the decision of the district court finding the language of the settlement agreement ambiguous, thereby rendering a determination of its meaning was

a proper issue for trial. *Id.* In reaching this conclusion, the First Circuit recognized the holding in *Strozier,* but found that in the case at bar, the plaintiff "received significantly less from the settlement" than he would have attained with a "complete legal victory." *Id.* at 12–13.

■ With these cases in mind, the Court turns to the terms of the settlement of Reidy's grievances. The disposition of Reidy's grievances is documented by several forms which are each entitled "Pre–Arbitration Agreement." The body of these forms contains the following statements:

> As a result of our discussion on this date, in regard to the above captioned grievance, the [Union] withdraws its request for arbitration.

\* \* \* \* \* \*

> This agreement is in full and final settlement of all issues germane to this case. Additionally, both parties agree that this settlement is nonprecedent setting and will not be cited by either party in any subsequent grievance or arbitration hearing or any other form whatsoever.

The document is signed by a Union representative and an individual holding the title "Labor Relations Specialist," presumably a Post Office representative. The plaintiff's signature does not appear on any settlement document.

In the Court's view, the binding effect of these settlements cannot be determined on a motion for summary judgment. Whether the Court applies the totality of the circumstances test or general contract principles, the outcome is the same. The language in the settlement agreement is ambiguous. It provides that the settlement governs "all issues germane to this case" and then contradictorily states that it is "non-precedent setting[,] ... not [to be] cited" in any grievance, arbitration or "other form whatsoever." Given this language, it would be reasonable for the plaintiff to interpret the settlement as applying solely to disputes arising under the terms of the collective bargaining agreement rather than as a result of a federal statute. *Cf. Perez,* 760 F.2d at 12–13; *Tang v. State of Rhode Island Dep't of Elderly Affairs,* 904

F.Supp. 69, 75 (D.R.I.1995) (recognizing the law as set forth in *Strozier* but denying the defendants' motion to dismiss based on the procedural posture of the case); *Montgomery v. Frank,* 796 F.Supp. 1062, 1067–68 (E.D.Mich.1992) (recognizing that settlement of arbitration grievances will not operate as a bar to future statutory claims absent sufficient evidence that the settlement precludes a subsequent lawsuit).

In addition, the Court notes that the plaintiff's signature does not appear on the settlement agreement and there is no indication that Reidy was (a) represented by counsel, (b) offered the opportunity to consult with an attorney, or (c) aware of the terms of the agreement. Accordingly, it would be inappropriate to rule, as a matter of law, that the plaintiff's claims should be dismissed without any other evidence that Reidy knowingly and voluntarily waived his statutory rights. As a result, the Post Office's motion for summary judgment based on the prior settlement of Reidy's grievances is denied.

### 2. *Exhaustion of administrative remedies*

■ The Post Office argues in the alternative that the plaintiff's claims are untenable because' he failed to exhaust his administrative remedies. To commence a lawsuit against a federal government employer, a plaintiff must exhaust his administrative remedies by filing a timely administrative charge. *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Brown v. General Servs. Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

■ As part of these requirements, the alleged discriminatory acts must be raised in a timely fashion. According to the federal regulations, a postal employee must initiate contact with an EEO counselor in an effort to resolve the matter informally. *See* 29 C.F.R. § 1614.105(a); *Briones v. Runyon,* 101 F.3d 287, 289–90 (2d Cir.1996). This contact must be made within 45 days of the alleged unlawful act. 29 C.F.R. § 1614.105(a)(1); *Pauling v. Secretary of Dep't of Interior,* 960 F.Supp. 793, 799 (S.D.N.Y.1997); *Ausfeldt v. Runyon,* 950 F.Supp. 478, 483 (N.D.N.Y.1997); *Dil-*

*lard v. Runyon,* 928 F.Supp. 1316, 1323 (S.D.N.Y.1996), *aff'd,* 108 F.3d 1369 (2d Cir. 1997). This timeliness requirement is not jurisdictional. *Briones,* 101 F.3d at 290, citing, *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996); *Metsopulos v. Runyon,* 918 F.Supp. 851, 857 (D.N.J.1996). Rather, the regulations and case law provide that this time frame operates like a statute of limitations, in that it is subject to waiver, estoppel and equitable tolling. *See* 29 C.F.R. § 1614.105(a)(2); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94–95, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); *Albritton v. Kantor,* 944 F.Supp. 966, 970 (D.D.C.1996); *Janneh v. Runyon,* 932 F.Supp. 412, 417 (N.D.N.Y.1996), *aff'd;* 108 F.3d 329 (2d Cir.1997) (dismissing case where plaintiff fails to comply with timeliness requirements and cannot justify invocation or equitable tolling or continuous violation doctrines); *Arizmendi v. Lawson,* 914 F.Supp. 1157, 1159 (E.D.Pa.1996) (recognizing that the requirements of 29 C.F.R. § 1614.105(a)(1) are not jurisdictional).

The federal regulations provide for an equitable exception to the 45 day timeliness requirement as follows:

> The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for the reasons considered sufficient by the agency of Commission.

29 C.F.R. § 1614.105(a)(2). Similarly, the Second Circuit has recognized that the doctrine of equitable tolling applies where: (1) the plaintiff has actively pursued judicial remedies in the prescribed time period; or (2) the plaintiff was induced or tricked by his adversary's misconduct to let the deadline pass; or (3) the court causes the plaintiff to believe that all requirements have been fulfilled; or (4) the plaintiff has received inade-

quate notice; or (5) where a motion for appointment of counsel is pending. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11–12 (2d Cir.1994); *see Briones*, 101 F.3d at 290 n. 2 (summarizing these standards). A simple failure to exercise due diligence however, is unlikely to be excused. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457–58.

 In addition to seeking an equitable tolling, a plaintiff may circumvent timeliness requirements by invoking the continuous violation doctrine.

The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests. Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, *see Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," continuing violation may be found, *Cornwell*, 23 F.3d at 704.

*Van Zant*, 80 F.3d 708, 713 (2d Cir.1996); *see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906–07 (2d Cir.1997); *Pauling*, 960 F.Supp. at 801–02 (declining to apply the continuous violation doctrine). To invoke the continuous violation doctrine, the discrimination charge must be timely with respect to at least one of the allegedly unlawful incidents. *Lambert*, 10 F.3d at 53.

 The plaintiff has the burden of pleading and proving any equitable reasons for failing to meet the timeliness requirement for bringing the discrimination charge to the attention of the EEO counselor. *See Albritton*, 944 F.Supp. at 970–71; *Arizmendi*, 914 F.Supp. at 1159–60 (dismissing case where plaintiff failed to demonstrate that she was entitled to an equitable tolling of the requirements of 29 C.F.R. § 1614.105(a)(1)).

 Applying these standards, the Court finds that the plaintiff has established a con-

tinuous violation sufficient to survive summary judgment. At the outset, the Court notes that Reidy's claims of unlawful conduct span from November 12, 1991 to April 12, 1993. He first contacted an EEO officer on March 10, 1993. Accordingly, his claims alleging unlawful denial of overtime occurring on or after January 24, 1993 fall within the prescribed 45 day period.

The Post Office argues that the

[p]laintiff cannot avoid preclusion of his claims on the basis of timeliness by arguing that the Postal Service's denial of overtime amounted to a continuous denial. Plaintiff was filing separate grievances for each denial beginning in November 1991 ... and did in fact work overtime during that time period.... Plaintiff was therefore fully aware of his claims well over a year before he contacted an EEO counselor and there was no continuity.

Post Office Mem. of Law at 13 n. 6.

The defendant's reasoning has one major flaw. It combines the elements of the equitable tolling and continuous violation doctrines. The Court agrees that Reidy knew that his rights under the collective bargaining agreement were being violated, as is demonstrated by the numerous grievances which he filed with the Union. However, the plaintiff's knowledge of his rights would weigh in favor of denying application of the equitable tolling doctrine, which Reidy does not attempt to invoke.

Rather, the plaintiff contends that the consistent denial of overtime shifts is the result of a single unlawful discriminatory animus based on his alleged disability. In support of this position, Reidy asserts in his supporting affidavit that he was denied overtime on 260 occasions. In addition, he claims that coworkers, Chicha Cannon and Mary Butterfield, who were also assigned to restricted duty were similarly denied overtime. The plaintiff asserts that the reasons he was given for denying him overtime were contradictory. The Union was advised that the overtime work was "outside [his] limitations" despite the fact that the overtime shifts require the same work as his regular workday. In contrast, the EEO counselor, Lori Foster, informed Reidy that the Post

Office did not consider him disabled. Rather, he was denied overtime due to the "needs of the service," —a term that was apparently never defined. In the Court's view, this evidence, if established, is sufficient to demonstrate the existence of an overarching discriminatory policy and warrant application of the continuous violation theory. As a result, the defendant's motion for summary judgment on untimeliness grounds is denied.

### 3. Failure to establish a prima facie case

The defendant's third argument is that the plaintiff is unable to establish a prima facie case of employment discrimination. Section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....

29 U.S.C. § 794(a).

■■■■■■ To establish a prima facie case of employment discrimination under section 504, a plaintiff must show that he is: (1) an individual with a disability within the meaning of the statute; (2) who is otherwise qualified to perform the job; (3) who received adverse treatment in his employment; and (4) the employer is a recipient of federal financial assistance. *See Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir.1995); *Heilweil*, 32 F.3d at 722; *Gilbert v. Frank*, 949 F.2d 637, 640 (2d Cir.1991); *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981). Failure to establish one of these four elements is fatal to a claim of employment discrimination. *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir.1994), *cert. denied*, 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 283 (1995).

■■■■■ The term "individual with a disability" is defined in the statute as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B); *Gupton v. Commonwealth of Virginia*, 14 F.3d 203, 205 (4th Cir.1994). Major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1613.702(c). The statute does not cover the inability to work at the job of one's choice. *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989). For example, being rejected for a job as a police officer because of a failure to pass an eye examination does not constitute discrimination on the basis of a disability. *Joyce v. Suffolk County*, 911 F.Supp. 92, 95 (E.D.N.Y.1996); *accord Roth v. Lutheran General Hosp.*, 57 F.3d 1446 (7th Cir.1995) (doctor's inability to be certified in a particular field because of vision impairments does not constitute a disability within the meaning of the Rehabilitation Act). As the Second Circuit recognized in *Daley:*

"[i]t would debase the high purpose [of protecting the disabled from discrimination in employment] if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment."

*Daley*, 892 F.2d at 215, quoting, *Forrisi v. Bowen*, 794 F.2d 931, 934 (4th Cir.1986).

■■■■ The Post Office maintains that Reidy is unable to establish a prima facie case because his neck injury does not limit him in a major life activity. As a result, the defendant contends that he is not an individual with a disability as defined by the statute. The Court disagrees.

In 1986, Reidy suffered an injury to his neck when he fell while carrying a mail tray. According to his treating physician, Francis O'Malley, M.D., the plaintiff suffered "a sprain and sprain of the cervical (847.0) spine." Dr. O'Malley does not "expect Mr. Reidy to recover from his injury." Decl. of

Richard Bronstein, Ex. E. As a result of the injury, Reidy is restricted from lifting heavy weight, twisting and bending. Although the plaintiff was never hospitalized and did not undergo surgery, as a result of the sprain, the plaintiff missed six months of work and underwent several months of physical therapy. Further, after seeing both Dr. O'Malley and a Post Office doctor, the plaintiff was assigned to limited duty. Based on this assignment, Reidy was restricted from lifting heavy objects, and performing tasks such as "sweeping," which require twisting and bending.

In the Court's view, this evidence demonstrates that the plaintiff is an "individual with a disability" within the meaning of the statute in two ways. First, it establishes that Reidy is limited in a major life activity, namely working. The plaintiff, a person doing manual labor, has been restricted in his ability to lift, bend and twist since his accident, for the last eleven years. His treating physician submitted a letter stating that Reidy will not recover. In the Court's view, such restrictions would limit the plaintiff from a wide range of work as opposed to merely a single job. Therefore, his injury would qualify as a disability under the Rehabilitation Act.

Second, the plaintiff has offered evidence that the Post Office regards him as being disabled. Since 1986, when the plaintiff returned to work after the injury, he has been placed on limited duty. This assignment occurred after both Reidy's personal doctor and the employer's doctor examined him. In addition, according to the Union, the Postal Service admitted that it was denying Reidy's requests for overtime because such work was "outside [his] limitations." In the Court's view, this evidence demonstrates that, in addition to being limited in a major life activity, Reidy was also *perceived* as being disabled. *See Gaskins v. Runyon*, 921 F.Supp. 779, 782 (D.D.C.), *aff'd*, 1994 WL 704080 (D.C.Cir. 1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 60 (1995) (finding that where Post Office regards plaintiff as substantially limited in her ability to work due to an alleged back injury, that employee is protected under the Rehabilitation Act). Taking

this evidence in its totality, and drawing all reasonable inferences in favor of the nonmovant, the Court finds that the plaintiff has presented sufficient proof to create material issues of triable fact with respect to his disability so as to defeat summary judgment.

In reaching this conclusion, the Court finds that the cases cited by the Post Office are distinguishable. For example, in *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997), the Fourth Circuit held that a 25 pound limitation on what an employee could lift was insufficient to constitute limitation on a major life activity under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as a matter of law. In that case however, the plaintiff was not limited in other capacities such as bending and twisting. In addition, and equally significant, in *Williams*, there was no indication that the employer regarded the plaintiff as disabled. Unlike this case, the employee was not placed on some type of restricted work assignment indefinitely. Similarly, in *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995), the Tenth, Circuit considered only whether the plaintiff was actually limited in a major life activity, not whether he was regarded as having such a limitation. In *Paegle v. Department of Interior*, 813 F.Supp. 61, 64 (D.D.C.1993), the plaintiff was suffering from a temporary rather than a permanent injury, which precluded a finding that he was disabled.

### 4. *Exclusivity of the Federal Employees' Compensation Act*

██ Finally, the Post Office argues that any recovery under the Rehabilitation Act should be precluded based upon Reidy's recovery of workers' compensation benefits. As a result of his injury, the plaintiff received benefits pursuant to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101–93. FECA provides for an exclusive remedy to injured federal workers:

> The liability of the United States or an instrumentality thereof under this subchapter ... with respect to the injury or

death of an employee is exclusive instead of all other liability of the United States or the instrumentality to the employee ... entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c).

As a general proposition, the courts that have addressed the issue, have found that FECA will not operate as a bar to claims brought pursuant to Title VII. *See Nichols v. Frank,* 42 F.3d 503, 515–16 (9th Cir.1994); *Miller v. Bolger,* 802 F.2d 660 (3d Cir.1986); *Karnes v. Runyon,* 912 F.Supp. 280, 284 (S.D.Ohio 1995); *Callanan v. Runyun,* 903 F.Supp. 1285 (D.Minn.1994), *aff'd,* 75 F.3d 1293 (8th Cir.1996); *Gergick v. Austin,* 764 F.Supp. 580, 581 (W.D.Mo.1991); *Johnson v. Sullivan,* 764 F.Supp. 1053, 1063 (D.Md. 1991); *George v. Frank,* 761 F.Supp. 256, 259 (S.D.N.Y.1991); *Sullivan v. United States,* 428 F.Supp. 79, 81 (E.D.Wis.1977); Andrew M. Campbell, Annotation, *Federal Compensation Acts, in Nature of Workers' Compensation Acts, as Affecting Recovery Against United States under Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671 et seq.),* 135,.L.R. Fed. 403, 454–55 (1996).

In *Miller,* the seminal case on this subject, the Third Circuit determined that FECA will not operate as bar to a subsequent Title VII action for the following reasons:

1. Section 8116(c) of FECA is exclusive as to other claims for "damages.," while Title VII is considered to provide equitable relief;

2. Section 8116(c) specifies that it provides a remedy as an alternative to those provided under "a workmen's compensation statute or Federal tort liability statute," suggesting that it was not intended to supplant "liability under a federal discrimination statute;" and

3. The legislative history of FECA suggests that it was only intended to provide the exclusive remedy with respect

to statutes such as the Federal Tort Claims Act which address "accidents in employment" as opposed to actions based on intentional conduct.

*Miller,* 802 F.2d at 663. Further, *Miller* relies on the fact that when Title VII was extended to cover entities such as the Post Office in 1972 under the Equal Opportunity Act, there was no mention of FECA, either in the new statute or its legislative history. *Id.* at 663–64.

Of course, in considering *Miller* the Court is cognizant of the fact that since the Third Circuit handed down this decision, Congress has enacted the Civil Rights Act of 1991, Pub.L. 102–106, 105 Stat. 1071, which provides for, among other things, jury trials, compensatory and punitive damages awards. *See* 42 U.S.C. § 1981a(b), (c). Based on these statutory revisions, the Court is hesitant to continue to label Title VII claims as purely equitable in nature.

In any event, the courts disagree as to whether the reasoning set forth in *Miller* applies to cases brought under the Rehabilitation Act. *Compare Karnes,* 912 F.Supp. at 284–85 (holding that an employee's FECA claim will not preclude a subsequent Rehabilitation Act claim) *with Stubler v. Runyon,* 892 F.Supp. 228, 229–30 (W.D.Mo.1994), *aff'd,* 56 F.3d 69 (8th Cir.1995) (holding that a FECA claim will preclude a subsequent disability discrimination claim under the Rehabilitation Act); *Alexander v. Frank,* 777 F.Supp. 516, 523–24 (N.D.Tex.1991); *Black v. Frank,* 730 F.Supp. 1087, 1090–91 (S.D.Ala. 1990). According to *Stubler* and relate decisions, FECA and Rehabilitation Act claims are mutually exclusive because:

[i]t would be an abuse of the purpose and meaning of both FECA and the Rehabilitation Act to allow an employee to claim FECA benefits, including prolonged assignments to limited duty, on the basis of an "injury,". and then later claim that the "injury" was in fact a "handicap" under the Rehabilitation Act. This is not to say, however, that an employee injured on duty can never be "handicapped" as a consequence of the injury.

*Stubler,* 892 F.Supp. at 230. As a result, where a "[p]laintiff claims that she was discriminated against solely by reason of the same on-the-job injuries: for which she filed claims for FECA benefits," her Rehabilitation Act cause of action will be barred. *Id.* (emphasis in original). In reaching this conclusion, the *Stubler* court was careful to distinguish the circumstances before it from those present in *Miller* "in which the plaintiff generally claims his or her injury *followed* some form of unlawful discrimination." *Id.* (emphasis in original).

This Court declines to apply *Stubler* and related cases for several reasons. First, and foremost, the Court believes the reasoning of these cases to be unsound. In *Miller,* the Third Circuit recognized that FECA will not preclude a subsequent Title VII employment discrimination claim based on (a) the language of FECA section 8116(c) providing that it is designed as an alternative to the federal tort liability statute; and (b) its legislative history which reveals that it was intended to provide a remedy for *"accidents* in employment" (emphasis added). Conspicuously absent from both FECA and the federal antidiscrimination statutes is any mention of a hierarchy of discrimination, which would demonstrate Congressional intent that FECA preempt only some forms of employment discrimination, namely disability discrimination—but not others, such as race discrimination. Accordingly, despite the outdated reference to the equitable relief provided under Title VII, the Court extends the Miller doctrine to cases involving disability discrimination, and in doing so expressly declines to follow those cases holding to the contrary. *See Karnes,* 912 F.Supp. at 284–85 (declining to follow *Alexander* and holding that an employee's FECA claim will not operate as a bar to a later action brought pursuant to the Rehabilitation Act). Accordingly, the Post Office's motion for summary judgment based on the plaintiff's prior award of worker's compensation benefits under FECA is denied.

In reaching this conclusion, the Court notes that even if *Stubler* and the related cases were applied in this case, Reidy's claims would still be viable. As stated above, central to the *Stubler* analysis is that the plaintiff's injury must serve as the basis for both his workers' compensation and discrimination claims. In this case however, the plaintiff was injured on the job in 1986 and received workers' compensation benefits based on that injury. He returned on limited duty and the alleged discrimination occurred five years later. Further, his claim focuses on a time frame that not only commenced five years after his injury, but is limited in focus to the assignment of overtime shifts, which is not strictly related to his original injury. As a result, even if the Court were inclined to follow the reasoning of *Stubler,* which it is not, summary judgment would nevertheless be inappropriate.

### III. *Conclusion*

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby

ORDERED, that the motion of the defendant for summary judgment, pursuant to Fed.R.Civ.P. 56, is denied; and it is further

ORDERED, that the parties are directed to appear for a status conference before the Court on Tuesday, August 26, 1997 at 9:00 a.m. at which time, among other matters, a trial date will be discussed.

SO ORDERED.